# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

BRUCE G. POLLARD, )
) AUG 5 2010
Petitioner, ) WILLIAM B. GUTHRIE
) Clerk, U.S. District Court
) By_____
) Deputy Clerk
v. ) Case No. CIV 09-047-FHS-KEW
)
MIKE MULLIN, Warden, )
)
Respondent. )

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on petitioner's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at Jess Dunn Correctional Center in Taft, Oklahoma, attacks his conviction in Atoka County District Court Case Number CF-2005-33 for Lewd Molestation. He sets forth the following grounds for relief:

I. The state courts unreasonably applied state and federal law by failing to overturn petitioner's conviction that was obtained in violation of his right against the admission of improper character evidence that prejudiced him unfairly.

II. State courts committed fundamental error by failing to correct the error that petitioner's sentencing jury was not instructed on the 85% Rule at the time of the sentencing.

III. Petitioner was denied the effective assistance of counsel on direct appeal, as guaranteed by the Oklahoma and United States Constitutions.

IV. Petitioner was denied the effective assistance of counsel at trial, as guaranteed by the Oklahoma and United States Constitutions, because:

A. Trial counsel failed to investigate all impeachment evidence of witness, and

B. Trial counsel failed to request the jury be instructed on the 85% Rule or to object when the trial court failed to instruct on the 85% Rule.

V. The accumulation of errors denied petitioner the fundamental right to due process throughout the state court proceedings, as guaranteed by the Oklahoma and United States Constitutions.

The respondent concedes that, with the exception of his cumulative error claim in Ground V, petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

A. Petitioner's direct appeal brief.

B. The State's brief in petitioner's direct appeal.

C. Summary Opinion affirming petitioner's Judgment and modifying his Sentence to a term of imprisonment of ten years. *Pollard v. State*, No. F-2006-1148 (Okla. Crim. App. Jan 28, 2008).

D. Findings of Fact and Conclusions of Law overruling petitioner's application for post-conviction relief. *State v. Pollard*, No. CF-2005-33, Atoka County Dist. Ct. (Sept 23, 2008).

E. Court Minute denying petitioner's motion to modify sentence. *State v. Pollard*, No. CF-2005-33, Atoka County Dist. Ct. (Sept. 23, 2008).

F. Petitioner's notice of post-conviction appeal and petition in error and brief in support.

G. Order Affirming Denial of Post-Conviction Relief. *Pollard v. State*, No. PC-2008-994 (Okla. Crim. App. Dec. 3, 2008).

H. Excerpt of the transcript of petitioner's jury trial.

I. Information in Atoka County District Court Case No. CF-2005-33, filed on February 16, 2005.

J.  Statement by Private Investigator Victor Porter concerning petitioner.

K.  Transcript of petitioner's jury trial.

L.  State court record in Atoka County District Court Case No. CF-2005-33.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> As to the "unreasonable application" standard, . . . only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254. . . . [A] decision is "objectively unreasonable" when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law. It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision. . . . [T]he state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.

*Sandoval v. Ulibarri*, 548 F.3d 902, 908 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006)), *cert. denied*, ___ U.S. ___, 130 S.Ct. 133 (2009)).

**Ground I: Improper Character Evidence**

Petitioner was convicted of Lewd Molestation of a ten-year-old child who was spending the night with petitioner's two young daughters at his house. He alleges the

3

Oklahoma Court of Criminal Appeals (OCCA) erred in allowing his adult daughter's highly prejudicial and inadmissible testimony of other crimes. The challenged testimony by the daughter concerned "numerous instances of sexual abuse committed against her by [petitioner] when she was a child." *Pollard v. State*, No. F-2006-1148, slip op. at 2 (Okla. Crim. App. Jan. 28, 2008).

At the time of petitioner's trial, the admissibility of other crimes evidence in sexual assault cases was governed by the standard of *Myers v. State*, 17 P.3d 1021, 1029-30 (Okla. Crim. App. 2000), *cert. denied*, 534 U.S. 900 (2001), which allowed "greater latitude . . . in sexual assault cases for the introduction of evidence that a defendant had committed other sexual assaults regardless of the degree of similarity of the other assaults to the charged offenses and regardless of the amount of time that had passed since the commission of other assaults." *Pollard*, No. F-2006-1148, slip op. at 2 (citing *Myers*, 17 P.3d at 1029). While petitioner's case was pending on appeal, the OCCA decided *James v. State*, 152 P.2d 255 (Okla. Crim. App. 2007), rejecting the *Myers* "greater latitude" rule and instead holding that:

> [E]vidence that a defendant had committed other sexual assaults beyond those charged could be admitted only if it was offered for a purpose specifically identified in Okla. Stat. tit. 12, § 2404(B), and . . . (1) there must be a visible connection between the other crimes evidence and the charged crimes; (2) the evidence must go to a disputed issue and be necessary to support the State's burden of proof; (3) the probative value of the evidence must outweigh the danger of unfair prejudice; and (4) the evidence must be clear and convincing. *James*, 152 P.3d at 257.

*Pollard*, slip op at 2-3.

Acknowledging that *James* applied to petitioner's pending direct appeal, the OCCA found that petitioner's adult daughter's testimony should not have been admitted at trial. *Id.*, slip op. at 5-6. Despite the error, however, the OCCA affirmed petitioner's conviction. *Id.*

4

at 6.

> Based on the record before us, we are not convinced the jury's guilty verdict would have been changed even if the offending evidence had been excluded in its entirety because the remaining case against Pollard was strong. The child-victim's testimony about the details of the alleged lewd act committed upon her and her recounting of the circumstances surrounding the act was corroborated as consistent with statements made to her grandmother, police, and forensic interviewers. Furthermore, the incredible and self-impeaching testimony of Pollard and his wife could do nothing but support an inference of guilt. *See* Okla. Stat. tit. 20, § 3001.1 ("[n]o judgment shall be set aside ... for error in any matter of pleading or procedure unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right.").
>
> However, while we are convinced the error was not outcome determinative on the issue of guilt, and therefore affirm the judgment of conviction, we are not so persuaded with regard to Pollard's sentence. Given that the jury imposed the maximum sentence of twenty years' imprisonment, on the facts of this case, we cannot conclude that . . . the inflammatory testimony given by Pollard's daughter did not ultimately affect the punishment imposed by the jury. Accordingly, we modify Pollard's sentence to a term of imprisonment of ten years.

*Id.* at 6-7.

The respondent alleges Ground I presents an issue concerning interpretation of a state sentencing statute that is not cognizable on habeas review. The respondent further asserts the OCCA's determination was consistent with federal law, under the standards of 28 U.S.C. § 2254(d).

The victim C.S. testified she was sleeping in a chair in the living room with petitioner's two daughters and their brother asleep on pallets, when petitioner bumped her leg and woke her up. (Tr. 34-36). When C.S. awakened, petitioner went behind a computer but then walked up to her, touched her thigh, and started rubbing her "privates" underneath

5

her clothes. (Tr. 37-38). He then got C.S. a drink of water before returning to his room. (Tr. 39). C.S. called her grandmother and told her what had happened and that she was very scared, so the grandmother came and picked up C.S. (Tr. 40-42).

C.S.'s grandmother testified that C.S. called her early in the morning of January 9, 2005, crying and saying petitioner had touched her leg and had stuck his hand down her pants and touched her privates. (Tr. 61-62). When the grandmother arrived at petitioner's house, she found C.S. outside, barefoot and crying. (Tr. 63). Once C.S. was in her grandmother's vehicle, she showed the grandmother where petitioner had touched her on her thigh and inside the front of her pants. (Tr. 65).

Natalie Usher of the Child Advocacy Center in Durant, Oklahoma, interviewed C.S. on January 21, 2005, and C.S. told Ms. Usher that petitioner had touched her on her privates, which Ms. Usher determined to be her vagina. (Tr. 99, 102-03). C.S. also told Ms. Usher that petitioner was wearing a T-shirt, pants, and underwear that evening. (Tr. 105-06).

Petitioner's wife Mary Pollard testified that, as usual, petitioner wore pajamas, consisting of long pants and a T-shirt, to bed on the night of the incident, and he never left their bed during the night. (Tr. 165-66, 178, 180-81). She heard the children whispering but did not hear C.S. make a phone call or leave the house. (Tr. 166-67, 179, 181). Petitioner testified he was wearing pajama pants with no T-shirt on the night in question, and all the other witnesses were lying. (Tr. 192-93). He stated that C.S. never saw him in his night clothes, he never left his bed that night, and when he emerged from his bedroom the next morning, C.S. was gone. (Tr. 195).

Petitioner's 22-year-old daughter Nicole Janes testified that he began molesting her when she was about eight years old, and he continued until she was thirteen. (Tr. 110-11).

6

She described petitioner's standing her, naked from the waist down, on toilet seat, when she was about eight or nine years old. (Tr. 111). He then placed his penis between her legs and told her to move as if she were "using a hula hoop." (Tr. 111-12). On more than one occasion, petitioner took her in his pickup, claiming to be going to the store, but instead he went into the woods, placed her on the ground, pulled down her clothes, and touched her vagina. (Tr. 112-13). She was between eight and thirteen years old at the time. (Tr. 113). While giving Nicole a piggy-back ride, petitioner stuck his hands in her shorts and touched her. (Tr. 114). She further testified that on several occasions, she woke up to his touching her vaginal area. (Tr. 115-16). She was too scared to try to make noise for help. (Tr. 116). Petitioner once took Nicole to a pond after it was dark. (Tr. 117). They both were lying on the bank of the pond when he touched her with his hands and penis and tried to get her to have sex with him. (Tr. 117). Some of the other incidents described by Nichole included being molested in a field and on the living room floor of her stepmother's grandparents' home. (Tr. 118-19). Petitioner told Nicole that his acts were normal, and her friends' fathers did the same thing. (Tr. 119). He also told her that if she told anyone, their family would be destroyed. (Tr. 119, 125). Nichole said the molestations began before her parents' divorce when she was eight years old and stopped when she was thirteen years old, because she stopped seeing him for visitation. (Tr. 123).

In analyzing the OCCA's determination of harmless error in the admission of Nicole Janes' testimony, this court applies the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), to determine whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

7

> A "substantial and injurious effect" exists when the court holds at least a "grave doubt" about the effect of the error on the jury's verdict. See *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435.

*Douglas v. Workman*, 560 F.3d 1156, 1171 (10th Cir. 2009) (footnote omitted).

After careful review of the record, the court finds the admission of Nicole Janes' testimony did not render petitioner's trial fundamentally unfair, and the testimony did not have a substantial and injurious effect or influence on the jury's verdict. The OCCA was correct in finding the exclusion of the evidence would not have affected the verdict, because the remaining evidence against petitioner was strong enough for a conviction. Therefore, the OCCA's determination was not contrary to, or an unreasonable application of, federal law, and the OCCA's decision was not based on an unreasonable determination of the facts presented at trial. See 28 U.S.C. § 2254(d). This ground for habeas relief fails.

## Grounds II, III, and IV(B): 85% Rule and Ineffective Assistance of Counsel

Petitioner alleges in Ground II that the trial court erroneously failed to instruct the sentencing jury that he would be required to serve 85% of the sentence imposed for his crime before being eligible for parole (the "85% Rule"), and he claims in Ground IV(B) that his trial counsel was ineffective in failing to request the instruction or object to the trial court's failure to give the instruction. He further asserts in Ground III that his appellate counsel was ineffective in failing to raise these claims on direct appeal. The Court of Criminal Appeals found the claim regarding the 85% Rule and the related ineffective assistance of trial counsel claim were procedurally barred. *Pollard v. State*, No. PC-2008-994, slip op. at 2 (Okla. Crim. App. Dec. 9, 2008). The OCCA further found that petitioner's claim of ineffective

8

assistance of appellate counsel was meritless. *Id.* at 2.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Tenth Circuit has acknowledged Oklahoma's consistent application of the "waiver" rule in appellate proceedings and that the OCCA's procedural bar rests on an adequate and an independent state ground. *Steele v. Young*, 11 F.3d 1518, 1522 (10th Cir. 1993).

"'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. With respect to the "prejudice" prong of the "cause and prejudice" requirement, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Petitioner claims the "cause" of his procedural default was the ineffective assistance of his appellate counsel. The United States Supreme Court set forth the two-part test for determining the validity of a habeas petitioner's claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). The test requires a showing that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687. The *Strickland* test also applies to appellate counsel. *Evitt v. Lucey*, 469 U.S. 387, 393-400 (1985).

9

> The Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Consequently, appellate counsel engage in a process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1985) (quoting *Jones*, 463 U.S. at 751-52). The weeding out of weak claims to be raised on appeal "is the hallmark of effective advocacy," *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir. 1991), *cert. denied*, 502 U.S. 835 (1991), because "every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

*United States v. Cook*, 45 F.3d 388, 394-95 (10th Cir. 1995).

The OCCA found petitioner had not established his appellate counsel was ineffective:

> After a review of the pleadings filed in this Court, we find Petitioner has failed to establish entitlement to relief. In order to prevail on his claim of ineffective assistance of appellate counsel, Petitioner must establish that counsel made errors so serious the performance was deficient, and that the deficient performance deprived Petitioner of an appeal whose [sic] results are reliable and fair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance, or to preclude enforcement of a procedural default. *Id.* We FIND Petitioner has not established appellate counsel's performance was deficient, or that the result of his trial and appeal was not reliable and fair.

*Pollard*, No. PC-2008-994, slip op. at 1-2.

At the time of petitioner's trial and sentencing in October 2005, Oklahoma juries were not instructed about any issues of a defendant's parole eligibility or service of sentence. *See Anderson v. State*, 130 P.3d 273, 278 (Okla. Crim. App. 2006). If trial counsel had requested the instruction, the trial court would have denied the request, and any objection to the trial court's failure to give the instruction also would have been denied. *See id.* Therefore, trial counsel was not ineffective under *Strickland* in failing to request the instruction or object to

10

the absence of the instruction.

Although the law regarding instructing the jury on the 85% Rule became effective after petitioner's trial and sentencing, its effective date occurred before his appellate brief was filed on July 2, 2007. *See Anderson*, 130 P.3d at 282; *Carter v. State*, 147 P.3d 243, 244-45 (Okla. Crim. App. 2006). In two cases after *Anderson*, where the defendants were young men and the juries had questions about sentencing guidelines, *Anderson* was applied retroactively and those two defendants were given limited relief in the form of remands for resentencing. *See Carter*, 147 P.3d at 245; *Roy v. State*, 152 P.3d 217, 224 (Okla. Crim. App. 2006). The OCCA noted that "[a] violation of *Anderson* is a type of instructional error," which must be evaluated to "determine whether the error resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right." *Roy*, 152 P.3d at 224-25 (quoting *Carter*, 147 P.3d at 244). In another post-*Anderson* case, *Lacy v. State*, 171 P.3d 911, 914 (Okla. Crim. App. 2007), the OCCA found *Anderson* was applicable, because it was pending on direct appeal when *Anderson* was decided. The OCCA, however, found "the law and the evidence [did] not require modification of Lacy's sentence." *Lacy*, 171 P.3d at 913.

In petitioner's case, he was 40 years old at the time he committed his crime, and the jury asked no questions about sentencing during their deliberations. As set forth above, the evidence against him was strong and credible. Although petitioner claims he instructed his appellate counsel to raise the 85% Rule claim, the court finds there is no evidence that anything "external" prevented appellate counsel from constructing or raising the claim. The court further finds there is no indication petitioner would have been granted relief, if his appellate counsel had raised a claim about the 85% Rule. The OCCA reduced petitioner's

11

sentence on direct appeal from 20 to 10 years, *Pollard*, No. F-2006-1148, slip op. at 7, and he has presented no evidence that he would have received additional relief. He, therefore, also has failed to show "prejudice" from the procedural bar.

The court further finds that petitioner has failed to demonstrate that application of the procedural bar will result in a fundamental miscarriage of justice. The Tenth Circuit Court of Appeals has held that "[c]ases involving a fundamental miscarriage of justice 'are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Gilbert v. Scott*, 941 F.2d 1065, 1068 n.2 (10th Cir. 1991) (citing *McClesky v. Zant*, 499 U.S. 467, 494 (1991)). The Tenth Circuit has explained this "very narrow exception" as follows:

> [T]he petitioner must supplement his habeas claim with a colorable showing of factual innocence. Such a showing does not in itself entitle the petitioner to relief but instead serves as a "gateway" that then entitles the petitioner to consideration of the merits of his claims. In this context, factual innocence means that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

*Demarest v. Price*, 130 F.3d 922, 941-942 (10th Cir. 1997) (internal quotations omitted). Petitioner has not made a colorable showing of factual innocence, so relief cannot be granted. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). Grounds II, III, and IV(B) fail.

### Ground IV(A): Ineffective Assistance of Trial Counsel

Petitioner alleges in Ground IV(A) that his trial counsel was ineffective in failing to investigate all impeachment evidence of a witness. He has presented no facts in support of this claim, so the court assumes he is raising the same claim presented in Proposition II of his direct appeal and that he is relying solely on his direct appeal brief.

12

He asserted on direct appeal that trial counsel failed to investigate the victim and his adult daughter or to offer impeachment evidence against these two witnesses. In support of this direct appeal claim, petitioner presented a private investigator's report indicating the victim had stated she was not molested by petitioner. The investigator also found that petitioner's adult daughter had written in a diary eight years earlier that she was angry at petitioner and wanted to see him dead or in prison.

The OCCA denied relief as follows:

> Having reviewed the impeachment evidence Pollard claims his attorney failed to investigate, we find it to be insufficient to sustain a claim of constitutionally ineffective representation. Specifically, we find nothing in the proffered evidence that could have affected the outcome of the case in any way. Pollard fails to meet his burden on this claim. *See Strickland v. Washington*, 466 U.S. at 694 (holding that to prevail on ineffective assistance claim, defendant must show to reasonable probability that but for counsel's unprofessional errors, result of proceeding would have been different, with reasonable probability being defined as probability sufficient to undermine confidence in outcome).
>
> Additionally, Pollard's request for a remand for an evidentiary hearing contained in his brief along with the accompanying supporting affidavit of his investigator is insufficient to demonstrate by clear and convincing evidence there is a strong possibility that trial counsel was ineffective for failing to identity or use the allegedly un-investigated and undiscovered evidence. Accordingly, Pollard's request for an evidentiary hearing is denied. *See* Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2007) ("[i]n order to rebut the strong presumptions of regularity of trial proceedings and competency of trial counsel, the application and affidavits must contain sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence.").

*Pollard*, F-2006-1148, slip op. at 7-8.

After careful review, the court agrees that petitioner has failed to show the OCCA's

13

adjudication of this claim was contrary to or an objectively unreasonable application of *Strickland*, or that it involved an unreasonable determination fo the facts in light of the evidence presented in the state courts. The court further finds petitioner has failed to identify any evidence that his counsel would have discovered, had he conducted further investigation, that likely would have changed the outcome of the trial. Thus, he has failed to establish either prong of the *Strickland* test with respect to this claim. *Strickland*, 466 U.S. at 687.

### Ground V: Cumulative Error

Finally, petitioner claims the accumulation of errors denied him due process. The respondent alleges this issue has not been presented to the state court, so it would be procedurally barred by the OCCA under the Post-Conviction Procedure Act, Okla. Stat. tit. 22, § 1086.

A district court has two options when faced with a "mixed" petition containing both exhausted and unexhausted claims. One option is to require the petitioner to exhaust all his claims in state court before bringing the petition. *See Rose v. Lundy*, 455 U.S. 509, 510) (1982) (instructing a district court to dismiss without prejudice and allow the petitioner to refile once the claims are exhausted). The second option it to deny the entire petition on the merits, notwithstanding failure to exhaust, if the court is convinced the unexhausted claim is without merit, or that the issue is easily resolvable against the petitioner. *See* 28 U.S.C. § 2254(b)(2). Although petitioner has asked to have this habeas claim dismissed, so he can exhaust it in the state courts, the court finds it would be futile for him to present it in a state post-conviction action.

"'Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors.'" *Castro v. Ward*, 138 F.3d 810,

14

832-33 (10th Cir.) (quoting *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998)). Because the court found no errors in petitioner's other claims for habeas corpus relief, there can be no cumulative error.

**ACCORDINGLY**, the Magistrate Judge recommends that this action be, in all respects, dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties are given fourteen (14) days from being served with a copy of this Report and Recommendation to file with the Clerk of the Court any objections with supporting briefs. Failure to file timely written objections to the Magistrate Judge's recommendations may result in waiver of appellate review of factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**DATED** this 5th day of August 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE